## UNITED STATES DISTRICT COURT
## DISTRICT OF CONNECTICUT

LISA HOPKINS, ET AL.,

               *Plaintiffs,*

 v.                                       3:07-cv-1742 (CSH)

JOHN DESTEFANO, JR., ET AL.,

               *Defendants.*

### RULING ON MOTIONS FOR SUMMARY JUDGMENT

HAIGHT, Senior District Judge:

        Pending are Defendants' motions for summary judgment.  For the reasons stated herein, the motions of Defendants John DeStefano, Jr., the City of New Haven, and the Housing Authority of the City of New Haven for summary judgment [Docs. 97 & 105] are **GRANTED**. Plaintiffs' complaint as to those Defendants is dismissed with prejudice.  The Court declines to exercise supplemental jurisdiction over the Plaintiffs' state law claims against Defendants Affordable Housing Development Company, L.L.C., Eaton Row, L.L.C., and Jonathan Rose Companies, L.L.C.  Therefore, the Court does not reach the merits of the motion for summary judgment [Doc. 102] by those Defendants, and that motion is **DENIED AS MOOT**.  Because Plaintiffs commenced this action in the Superior Court of the State of Connecticut for the Judicial District of New Haven, and the case was subsequently removed to this Court, Plaintiffs' claims against those Defendants are **REMANDED** to the Superior Court.

## I.    INTRODUCTION

        In 2005, the above-named Plaintiffs purchased twelve new single-family homes on what is now known as Frances Hunter Drive in New Haven, Connecticut.  The homes were

constructed as part of an initiative of Defendant City of New Haven ("the City") to eradicate the blighted Elm Haven Housing Project and replace it with attractive homes to be owned by low and moderate income families.  In 2004, Defendant Housing Authority of the City of New Haven ("HANH") had selected Defendant Affordable Housing Development Company, L.L.C. ("AHDC") to develop twenty-seven single family homes on Frances Hunter Drive.  AHDC created Defendant Eaton Row, L.L.C. ("Eaton Row")  solely to develop and sell the 27 homes ("the Eaton Row Homes").  Eaton Row is alleged to be a subsidiary of Defendant Jonathan Rose Companies, L.L.C. ("Rose").  AHDC, Eaton Row, and Rose, represented by the same counsel, will sometimes be collectively referred to as "the Eaton Row Defendants."

AHDC and Eaton Row selected Penn Lyon Homes Corp. to manufacture the Eaton Row Homes offsite, at Penn Lyon's factory in Pennsylvania.  The homes were then shipped in separate pieces to New Haven, placed on pre-made foundations, and joined and completed by companies engaged by Eaton Row.  Such structures are described as "modular homes."

Plaintiffs purchased their homes from Eaton Row.  The City issued Certificates of Occupancy and Use for the buildings between April and July, 2005 and Plaintiffs moved into them shortly thereafter.  On October 27, 2007, Plaintiffs filed a complaint in the Superior Court of the State of Connecticut for the Judicial District of New Haven against Defendant John DeStefano, Jr., the Mayor of the City, the City, and HANH (collectively, "the Municipal Defendants"), and against the Eaton Row Defendants.  The complaint alleged that Plaintiffs' homes "failed in many substantial respects to conform to or comply with the mandatory requirements of the State Building Code, and, as such, were unfit to be  conveyed to purchasers for immediate occupancy."  Complaint, ¶ 8.  Plaintiffs further allege that because this "highly

laudable endeavor" of urban revitalization "had the potential of enhancing the political career of defendant DeStefano," the Mayor "insisted that speed of construction be given priority over quality of construction." *Id.*, ¶ 6. Because of DeStefano's "political motivations," the complaint alleges, he, the City and HANH "maliciously and intentionally" failed to enforce the Building Code during and after the construction of the Eaton Row Homes, and instead "issued certificates of occupancy permitting them to be sold to the plaintiffs while knowing, but concealing from the plaintiffs, the fact that the homes did not comply with said Code and were unfit for occupancy." *Id.*, ¶ 10. The complaint further alleges that the City, HANH, and DeStefano conspired and acted jointly" with the Eaton Row Defendants "to advance the political ambitions of defendant DeStefano by assisting the corporate defendants in taking substantial sums of money from the plaintiffs" in an unfair, fraudulent and deceptive manner. *Id.*, ¶ 12.

The complaint, described more fully *infra*, asserts claims against some or all Defendants for deprivation of Plaintiffs' Fourteenth Amendment rights to equal protection, substantive due process, and procedural due process, and violations of the Connecticut Unfair Trade Practices Act ("CUTPA"), Conn. Gen Stat. § 42-110 *et seq*. Defendants properly removed the case from the state court to this Court, which has original jurisdiction over Plaintiffs' constitutional claims against the City, HANH, and Mayor DeStefano pursuant to 42 U.S.C. § 1983, and supplemental jurisdiction over the state law claims pursuant to 28 U.S.C. § 1367(a).

Defendants have engaged in substantial discovery of the individual Plaintiffs, including written interrogatories and depositions. Plaintiffs have conducted no discovery of any Defendant. All Defendants now move separately for summary judgment. Plaintiffs oppose those motions.

## II.    STANDARD OF REVIEW

Summary judgment "should be rendered if the pleadings, the discovery, and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). "[T]he substantive law will determine which facts are material. Only disputes over facts that might affect the outcome of the suit under the governing law will preclude the entry of summary judgment." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A dispute about a material fact is "genuine" if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.* On a motion for summary judgment, "a court's responsibility is to assess whether there are any factual issues to be tried, while resolving ambiguities and drawing reasonable inferences against the moving party." *Couch Leatherwork Co., Inc. v. Ann Taylor, Inc.*, 993 F.2d 162, 167 (2d Cir. 1991) (citation omitted). The Second Circuit recently summarized Rule 56 practice in *Jaramillo v. Weyerhauser Co.*, 536 F.3d 140, 145 (2d Cir. 2008):

> Summary judgment is warranted only upon a showing by the movant that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law. When the burden of proof at trial would fall on the nonmoving party, it ordinarily is sufficient for the movant to point to a lack of evidence to go to the trier of the fact on an essential element of the nonmovant's claim. In that event, the nonmoving party must come forward with admissible evidence sufficient to raise a genuine issue of fact for trial in order to avoid summary judgment.

(citations and internal quotation marks omitted). The nonmoving party, in order to satisfy that requirement, must produce evidence in the record and "may not rely simply on conclusory statements or on contentions that the affidavits supporting the motion are not credible." *Ying Jing Gan v. City of New York*, 996 F.2d 522, 532 (2d Cir. 1993). *See also Scotto v. Almenas*, 142

4

F.3d 105, 114 (2d Cir. 1998) ("The nonmoving party may not rely on conclusory allegations or

unsubstantiated speculation," since "mere conjecture or speculation by the party resisting

summary judgment does not provide a basis on which to deny the motion.") (citations and

internal quotation marks omitted).  "If the evidence is merely colorable, or is not significantly

probative, summary judgment may be granted." *Anderson,* 477 U.S. at 249-50.

## III.    DISCUSSION

## A.    <u>The Complaint</u>

_____Plaintiffs' complaint contains 132 counts, spread over 66 pages.  Its content may be

understood by focusing upon the first-named Plaintiff, Lisa Hopkins, who purchased the home at

16 Frances Hunter Drive.  The claims asserted by the other Plaintiffs follow the same pattern.

Count One asserts a claim against Defendant DeStefano for violation of Plaintiff's

Fourteenth Amendment right to the equal protection of the laws.  Count Two asserts a claim

against Defendant DeStefano for violation of Plaintiff's Fourteenth Amendment right to

substantive due process of law.  Count Three asserts a claim against Defendant DeStefano for

violation of Plaintiff's Fourteenth Amendment right to procedural due process of law.  Counts

Four, Five and Six assert identical claims against the Defendant City.  Counts Seven, Eight and

Nine assert identical claims against Defendant HANH.  Count Ten asserts a claim against the

Eaton Row Defendants for violations of CUTPA, Conn. Gen. Stat. § 42-110g.  Count Eleven

asserts a claim against the Eaton Row Defendants for treble damages for theft, pursuant to Conn.

Gen. Stat. § 52-564.

In a prior ruling [Doc. 46] reported at 2008 WL 4000545 (D. Conn. Aug. 25, 2008)

(Thompson, J.*),* this Court dismissed the claims of all Plaintiffs against the Eaton Row

Defendants for theft and for damages for emotional distress under CUTPA.

**B.        Plaintiffs' Constitutional Claims Against the Municipal Defendants**

Plaintiffs assert that the Defendants DeStefano, City, and HANH violated their

Fourteenth Amendment rights to equal protection, substantive due process, and procedural due

process.  Plaintiffs' Amended Brief in Opposition to Defendants' Summary Judgment Motions

undertakes to explain their constitutionally protected interests.  It is said that Plaintiffs "received

a constitutional right to property by purchasing homes, and through their home ownership they

acquired a benefit." [Doc. 114 at 9]  "On the basis of their valid property interest  the plaintiffs

have a right to state a substantive due process claim."  *Id*.  "The plaintiffs assert . . . that as home

buyers and home owners they have a constitutionally protected property interest in the use of

their property and the enjoyments of its benefits."  *Id*. at 12.  "There is a 'legitimate claim of

entitlement' to the benefit of full value and enjoyment of the homes they purchased."

Supplemental Brief at 3-4.

The principal thrust of Plaintiffs' complaint against the Municipal Defendants is that the

Livable City Initiative of the City of New Haven ("LCI"), the agency of the City responsible for

inspecting buildings and issuing Certificates of Use and Occupancy, wrongfully issued

Certificates for their homes to the Plaintiffs, when LCI inspectors knew or should have known

that the homes were defective.  By doing so, Plaintiffs allege, the Municipal Defendants

"intentionally and maliciously failed and refused to enforce the said Building Code during and

after the construction of the homes in question and issued certificates of occupancy permitting

them to be sold to the plaintiffs while knowing, but concealing from them, the fact that the

homes did not comply with said Code and were unfit for occupancy,"  Complaint, ¶ 10, for the

purpose of advancing DeStefano's political ambitions.

I will consider Plaintiffs' constitutional claims in the order in which they are pleaded in the complaint.

**1.**     ***Equal Protection***

Plaintiffs' equal protection claims are based on the allegation that the Municipal Defendants,  by refusing to enforce the Building Code and issuing Certificates of Use and Occupancy to Plaintiffs while concealing from them known defects in the homes, "subjected the plaintiffs to treatment different from that accorded to all other identically situated purchasers of residential real estate in the City of New Haven, intentionally and irrationally."  Complaint, ¶ 10. In a written interrogatory, the Municipal Defendants asked Plaintiffs to identify the "identically situated purchasers" referred to in the complaint.  Plaintiffs responded: "All persons, identified in the land records on file at the City Clerk's office, who purchased new-construction dwellings anywhere in the City of New Haven other than Frances Hunter Drive during the same period of time."  Interrogatory 27, Ex. 3 to Municipal Defendants' Main Brief.

The Municipal Defendants support their motion for summary judgment with the affidavit of Andrew Rizzo, LCI's executive director and the City's chief building official.  Rizzo's affidavit states that "the Building Division of LCI was responsible for the inspection of new construction and the issuance of Certificates of Use and Occupancy for all residential construction in the City of New Haven" at the times alleged in the complaint.  Rizzo Affid., ¶ 4. Rizzo supervised Assistant Building Inspector Robert Walsh, who inspected the Eaton Row Homes before issuing the Certificates.  *Id*., ¶ 5.  Rizzo's affidavit states in pertinent part that the Eaton Row Homes "were inspected in the same manner that all modular housing in New Haven,

Connecticut is inspected"; he believed, "based on the actual inspections of the Eaton Row Homes, that each home substantially complied with the applicable Connecticut Building Code and were, thus, fit to be conveyed to purchasers for occupancy"; Walsh's inspections of the Eaton Row Homes "did not reveal any substantial violations of the applicable Connecticut Building Code"; Rizzo's Building Division "enforced all relevant provisions of the applicable Connecticut Building Code," and "enforced all relevant provisions of the applicable Connecticut Building Code in the same manner that it has with all modular housing in New Haven, Connecticut"; and he issued "Certificates of Use and Occupancy for each of the Eaton Row Homes after it was determined that they substantially complied with the relevant provisions of the applicable Connecticut Building Code . . . in the same manner that I issue all Certificates of Use and Occupancy for houses in Connecticut." *Id.*, ¶¶ 6-12.

"The Equal Protection Clause requires that the government treat all similarly situated people alike." *Harlen Assoc. Inc. v. Village of Mineola*, 273 F.3d 494, 499 (2d Cir. 2001). "While the Equal Protection Clause is most commonly used to bring claims alleging discrimination based on membership in a protected class," a plaintiff who does not allege membership in such a class "can still prevail in what is known as a 'class of one' equal protection claim." *Neilson v. D'Angelis*, 409 F.3d 100, 104 (2d Cir. 2005), *rev'd on other grounds in Appel v. Spiridon*, 531 F.3d 138, 141 (2d Cir. 2008). The Supreme Court created the "class of one" species of equal protection claim in *Village of Willowbrook v. Olech*, 528 U.S. 562, 564 (2000) (per curiam), which held that an equal protection claim can be brought by a "class of one" where "the plaintiff alleges that she has been intentionally treated differently from others similarly situated and that there is no rational basis for the difference in treatment."

The Second Circuit has said that "[i]n order to succeed on a 'class of one' claim, the level of similarity between plaintiffs and the persons with whom they compare themselves must be extremely high." *Neilson*, 409 F.3d at 104.  For that proposition, the Second Circuit cited and quoted the Seventh Circuit's opinion in *Purze v. Village of Winthrop Harbor*, 286 F.3d 34, 40 (7th Cir. 2002) ("In order to succeed, the [plaintiffs] must demonstrate that they were treated differently than someone who is *prima facie* identical in all relevant respects.").  Expanding on the concept of "*prima facie* identical," the Second Circuit went on to say in *Neilson*:

> We deem that test to require a plaintiff in such a "class one" case to show that (i) no rational person could regard the circumstances of the plaintiff to differ from those of a comparator to a degree that would justify the differential treatment on the basis of a legitimate government policy; and (ii) the similarity in circumstances and difference in treatment are sufficient to exclude the possibility that the defendants acted on the basis of a mistake.  Where a plaintiff in a class of one equal protection case relies on similarity alone, a more stringent standard must be applied than is applied in a racial discrimination case.

409 F.3d at 105 (citation and footnote omitted).

In *Clubside, Inc. v. Valentin*, 468 F.3d 144 (2d Cir. 2006), the Second Circuit rejected a class-of-one equal protection claim by a real estate developer in connection with a town's denial of his petition for an extension of the town's sewer system.  *Clubside* cited *Neilson* for the propositions that "class-of-one plaintiffs must show an extremely high degree of similarity between themselves and the persons to which they compare themselves," a showing that "is more stringent than that used at the summary judgment stage in the employment discrimination context."  483 F.3d at 159.  The plaintiff developer compared his project to others whose petitions were granted.  Reversing the district court, the court of appeals rejected the equal protection

claim, holding that "[o]n this record, no reasonable juror could conclude that the Clubside and Lynwood Hills developments were similarly situated," the Lynwood Hills project being "significantly smaller" and involving "different types of housing and density levels." *Id.* at 160.

Plaintiffs at bar characterize their equal protection claim as a class-of-one claim. In resisting the Municipal Defendants' motion for summary judgment, Plaintiffs rely principally upon the Second Circuit's opinion in *DeMuria v. Hawkes*, 328 F.3d 704 (2d Cir. 2003). *DeMuria* was decided at the pleading stage, on defendants' motion to dismiss the complaint. Plaintiffs sued their neighbor for harassment and a police officer for failing to respond adequately to that harassment, alleging violations of their equal protection and due process rights. The court of appeals affirmed the district court's dismissal of the due process claim, but held, reversing the district court, that an equal protection claim was sufficiently pled to survive a motion to dismiss. On that point, the Second Circuit said:

> Here, the DeMurias made a general allegation that [police officer] Hawkes gave them a different standard of police protection than that typically afforded a resident of Clinton. The facts they allege in their complaint support the conclusion that Hawkes' conduct was in violation of his duty as an officer of the Clinton police department. We find these allegations sufficient, albeit barely, to meet the minimal level established by *Olech* for "class of one" equal protection claims *at the pleading stage*. . . . As counsel recognized at oral argument, they face a significant hurdle in finding evidence to prove their allegations of selective enforcement and unequal treatment.
> Such concerns, however, should not defeat their claim *at the pleading stage*. Thus, we hold that the DeMurias have stated an equal protection claim adequate to survive a motion to dismiss.

328 F.3d at 707 (emphases added).

*DeMuria* does not control the case at bar because the issues do not arise at the pleading

stage, upon a motion to dismiss the complaint.  The Municipal Defendants move for summary judgment after full discovery on their part and a decision by the Plaintiffs not to seek any discovery.  *DeMuria* has never been applied by the Second Circuit in any context other than a motion to dismiss;[1] and district courts have declined to extend its rationale to cases requiring or presenting a more developed factual record.  *See, e.g., Hairston v. Thomas*, No. 02 Civ. 9301, 2003 WL 22126662 at *2 (S.D.N.Y. Sept. 12, 2003) ("*Demuria* dealt with a motion to dismiss the complaint.  Different standards are applicable to a habeas petition, which should set out substantive facts that will enable the court to see a real possibility of constitutional error.") (citation and internal quotation marks omitted).

Assuming without deciding that *DeMuria* would preserve the barebones and conclusory allegations of different treatment in the Plaintiffs' complaint from a motion to dismiss,[2] they are wholly inadequate, standing alone and in the face of Rizzo's uncontradicted affidavit denying the claim of different treatment by building inspectors, to withstand summary judgment.  These are precisely the sort of unsupported allegations that the cases cited in Part II, *supra*, hold are

---

[1] Indeed, according to Westlaw's "Keycite" analysis, the Second Circuit has not cited *DeMuria* at all since it was decided.

[2] That assumption is generous to Plaintiffs.  *Cf. Assoko v. City of New York*, 539 F. Supp. 2d 728, 736 (S.D.N.Y. 2008) ("Absent from Plaintiffs' Complaint are any direct allegations that the City declined to issue Certificates with respect to other homes that suffered from the same defects as did Plaintiffs' homes.  This complete failure to allege actual disparate treatment with respect to a similarly situated class is grounds for dismissing the equal protection claim.") (footnote omitted).  *Assoko* distinguished *DeMuria* because the complaint in that case contained specific factual allegations from which the trier of the facts could infer an equal protection violation.  The complaint in *Assoko* contained only "generalized allegations" which the court held were "not a substitute for allegations of actual disparate treatment."  539 F. Supp. 2d at 736 n.8.  *Assoko* was decided on a motion to dismiss.  The complaint in the case at bar is similarly deficient.

insufficient to withstand a properly supported motion for summary judgment.  To succeed on

their class-of-one equal protection claim, Plaintiffs are required to identify comparators with an

extremely high degree of similarity to themselves.  A broad-brush reference to all purchasers of

new-construction dwellings anywhere in New Haven except on Frances Hunter Drive simply will

not do.  Plaintiffs could, for example, have sought to develop evidence showing that other

developers using modular homes were subjected to more rigorous Building Code inspections

than were the Eaton Row Defendants.  If Plaintiffs needed discovery to obtain such proof, Rule

56(f)(2) provides that a party opposing summary judgment which "cannot present facts essential

to justify its opposition" may ask the court for "a continuance to enable affidavits to be obtained,

depositions to be taken, or other discovery to be undertaken."  Plaintiffs made no such request.

The Municipal Defendants' motion for summary judgment on Plaintiffs' equal protection

claims will be granted.[3]

**2.      *Substantive Due Process***

Plaintiffs claim that the Municipal Defendants violated their substantive due process

rights by wrongfully issuing Certificates of Occupancy and Use for the Eaton Row Homes for

buildings which were defective under the Connecticut Building Code.

In order to state a substantive due process claim for deprivation of property, "a party must

*first* establish that he had a valid 'property interest' in a benefit that was entitled to constitutional

_____

[3]  The complaint's equal protection claims are asserted only against the Municipal
Defendants, but there are references to "Defendants" in the pleading.  If Plaintiffs intend the
complaint to be read as charging the Eaton Row Defendants as co-conspirators in an agreement
to violate Plaintiffs' equal protection rights, that claim fails because, for the reasons stated in
text, there is no equal protection violation.  That is so with respect to all of Plaintiffs'
constitutional claims.

protection at the time he was deprived of that benefit." *Zahra v. Town of Southold*, 48 F.3d 674, 680 (2d Cir. 1995) (citations omitted). The Second Circuit "uses a strict 'entitlement' test to determine whether a party's interest in land-use regulation is protectible under the Fourteenth Amendment," and its analysis "focuses on the extent to which the deciding authority may exercise *discretion* in arriving at a decision, rather than on an estimate of the probability that the authority will make a specific decision." *Id.* That standard "appropriately balances the need for local autonomy, with recognition of constitutional protection at the very outer margins of municipal behavior," and "also recognizes that the Due Process Clause does not function as a general overseer of arbitrariness in state and local land-use decisions; in our federal system, that is the province of the state courts." *Id.* "Where a regulator has discretion with regard to the benefit at issue, there normally is no entitlement to that benefit." *Gagliardi v. Village of Pawling*, 18 F.3d 188, 192 (2d Cir. 1994). In *Zahra*, the plaintiff, a developer, claimed that he had a property interest in an insulation inspection he needed to conduct activities allowed by a building permit, and the defendant town's refusal to perform the inspection violated his right to substantive due process. The Second Circuit rejected that claim because "there was no constitutionally protectible 'property interest' in such an inspection." 48 F.3d at 681. The *Zahra* court acknowledged that "in certain circumstances, a party may have a constitutionally protected 'property interest' in a benefit that affects land use – *i.e.*, a building permit, certificate of occupancy, zoning variance, excavation permit or business license," but declined to recognize "the existence of such a 'property interest' in the *procedures* giving rise to such an interest." *Id.* (citations omitted) (emphasis in original).

In *Assoko*, 539 F. Supp. 2d 728, the plaintiffs purchased government-subsidized homes in

13

New York City.  Plaintiffs alleged their substantive due process rights had been violated because

"the City wrongfully *issued* Certificates [of Occupancy], allowing them to purchase defective

homes."  *Id*. at 739.  That is the same claim the Plaintiffs at bar make against the Municipal

Defendants.  The court in *Assoko*, citing *Zahra* and other Second Circuit authority, rejected the

constitutional claim:

> This claim cannot sustain a substantive due process violation
> because the issuance of a Certificate, even if in violation of
> municipal code, does not cause an injury attributable to the
> government that rises to a constitutional level. . . . Plaintiffs'
> alleged injuries were the product of defective construction of the
> homes, and the breach of contract by the developer, not the actions
> of the government.  Plaintiffs' claim proceeds on the flawed
> assumption that the issuance of a Certificate makes a municipality
> *constitutionally* responsible for all harms flowing from defects in a
> building, even if caused by private parties.  This is simply not the
> case.  A municipality is responsible for injuries caused by its
> actions, and even the wrongful issuance of a Certificate does not
> cause an injury to the recipient attributable to the government, let
> alone an injury rising to a constitutional level.  To the contrary, it
> bestows a clear benefit on the recipient.  Therefore, the wrongful
> issuance of a Certificate, even if in violation of municipal code,
> does not amount to a due process violation.

539 F. Supp. 2d at 739-740 (footnotes omitted).

    The reasoning of the district court in *Assoko* was, in my view, compelled by the Second

Circuit cases on point.  Those cases, of which *Assoko* is a progeny, are dispositive of the present

Plaintiffs' substantive due process claims.  The City of New Haven's housing authorities had the

same discretion in issuing or withholding Certificates of Occupancy as did the New York City

authorities in *Assoko*.   That discretion precludes the Plaintiffs' substantive due process claims.

The Municipal Defendants' motion for summary judgment dismissing those claims will be

granted.

**3._____*Procedural Due Process***

Plaintiffs' procedural due process claims, imprecisely pled, are clarified in their briefs. Their Opposing Brief at 11 asserts that "[t]he defendants violated the plaintiffs' procedural due process rights," and goes on to say: "When the homeowners found defects in their properties and contacted the New Haven Housing Authority or the City of New Haven, the plaintiffs were told that the plaintiffs should contact Eaton Row, the private partner of the housing program. The defendants denied the plaintiffs an opportunity to address their problems in a formal or informal hearing." Plaintiffs' Sur-Reply Brief makes the same point at 5: "The defendants, New Haven Housing Authority, City of New Haven and Mayor John DeStefano, Jr. violated the plaintiffs' procedural due process rights. Plaintiffs were denied an opportunity to be heard and were told to contact the private partner, Eaton Row defendants, to address their concerns." The briefs make it clear that Plaintiffs' procedural due process claims are only against the Municipal Defendants.

Just as in substantive due process, a procedural due process claim to be viable must identify a protectible interest entitling the claimant to a process that has not been furnished. The Second Circuit made that clear in *White Plains Towing Corp. v. Patterson*, 991 F.2d 1049, 1061-62 (2d Cir. 1993):

> In order to succeed on a claim of deprivation of procedural due process, a plaintiff must establish that state action deprived him of a protected property or liberty interest. To have a property interest in a public benefit, a plaintiff must have more than an abstract need or desire for it. He must, instead, have a legitimate claim of entitlement to it. Such property interests are created and their dimensions are defined by existing rules or understandings that stem from an independent source such as state law.

(citations and internal quotation marks omitted).

For these propositions the Second Circuit in *White Plains Towing Corp.* cited *Mathews v. Eldridge*, 424 U.S. 319, 332 (1976) ("Procedural due process imposes constraints on governmental decisions which deprive individuals of 'liberty' or 'property' interests within the meaning of the Due Process Clause of the Fifth or Fourteenth Amendment."), and *Bd. of Regents v. Roth*, 408 U.S. 564, 577 (1972) ("Property interests, of course, are not created by the Constitution.  Rather they are created and their dimensions are defined by existing rules or understandings that stem from an independent source such as state-law rules or understandings that secure certain benefits and support claims of entitlement to those benefits.").

These cases illustrate what a plaintiff must show to sustain a claim for violation of the right to procedural due process.  *Mathews* held that a plaintiff whose disability rights had been terminated had not shown that the statutory and regulatory scheme included an entitlement to an evidentiary hearing.  *Bd. of Regents,* holding that a university teacher had not shown a property interest protected by the Fourteenth Amendment sufficient to require university authorities to give him a hearing when they terminated his employment, stated: "Nor, significantly, was there any state statute or University rule or policy that secured his interest in re-employment or that created any legitimate claim to it.  In these circumstances, the respondent surely had an abstract concern in being rehired, but he did not have a property interest sufficient to require the University authorities to give him a hearing when they declined to renew his contract of employment."  408 U.S. at 578 (footnote omitted).  In *White Plains Towing Corp.*, the Second Circuit rejected the procedural due process claim by a towing company whose exclusive towing assignment for a section of highway was terminated by the New York State Police, since nothing in the towing agreement or state law created a property interest for the towing company:

16

"Accordingly, regardless of their unilateral hopes or expectations, plaintiffs had no cognizable property interest in continued towing referrals on I-287, and the mere termination of their status thus did not deprive them of a due-process-protected interest."  991 F.2d at 1062.  *See also Weinstein v. Albright*, 261 F.3d 127, 134 (2d Cir. 2001) ("In order to prevail on a due process claim, a claimant must identify a constitutionally protected liberty or property interest and demonstrate that the government has deprived that party of the interest without due process of law.").

In the case at bar, the Plaintiffs proclaim their dissatisfaction that the Municipal Defendants did not give them "a formal or informal hearing" into their complaints about defects in the Eaton Row Homes, but they fail entirely to identify any provisions in a contract, municipal ordinance or practice, or state law entitling them to a hearing before a municipal authority with respect to defective construction of the Eaton Row Homes.  That is fatal to Plaintiffs' claim that their constitutional procedural due process rights were violated.  To the extent that City officials told Plaintiffs to take their complaints to the Eaton Row Defendants, who constructed the homes, that is consistent with the holding in *Assoko* that a municipality's issuance of a Certificate of Occupancy does not make it constitutionally responsible for defects in buildings ascribable to private parties.

The Municipal Defendants' motion for summary judgment on Plaintiffs' procedural due process claims will be granted.

**4.    *Additional Considerations***

In their complaint, Plaintiffs make serious allegations of wrongdoing.  It is alleged that "all of the defendants acted jointly and in conspiracy with each other for the purpose of obtaining

17

improper political and economic advantages for themselves." Complaint, ¶ 5.  Plaintiffs further

contend that because the project "had the potential of enhancing the political career of defendant

DeStefano, he insisted that speed of construction be given priority over quality of construction,"

and that "because of the political motivations of defendant DeStefano and the financial greed of

the three corporate defendants, all defendants were motivated to minimize construction costs and

construction oversight." *Id.*, ¶ 6.  Plaintiffs maintain that the Municipal Defendants "intentionally

and maliciously failed and refused  to enforce the [State] Building Code during and after the

construction of the homes in question and issued certificates of occupancy permitting them to be

sold to plaintiffs while knowing, but concealing from plaintiffs, that fact that the homes did not

comply with the Code and were unfit for occupancy." *Id.*, ¶ 10.

Whatever view one may take of the sufficiency of these allegations at the pleading stage,

Plaintiffs cannot simply rest upon and repeat them when confronted with properly supported

motions for summary judgment.  That is the rule established by the cases cited in Part II, *supra*.

The affidavit of LCI executive director Andrew Rizzo, parts of which were quoted in

Section III.B.1., also states that "I was never directed by Mayor John DeStefano, Jr., any

employee or agent of the city of New Haven, or other defendant, nor did I direct anyone, to

disregard, ignore or fail to enforce the requirements of the applicable Connecticut Building Code

with respect to the Eaton Row Homes," or "to improperly issue Certificates of Use and

Occupancy for the Eaton Row Homes," or "to give the speed of construction priority over the

quality of construction of the Eaton Row Homes," or "to allow the developer, Eaton Row,

L.L.C., to sell homes that did not comply with the applicable Connecticut Building Code."

Affid., ¶¶ 15-18.  Thus Rizzo states under oath that Plaintiffs' charges are not true. Rizzo has

personal knowledge of the relevant facts and his testimony would be admissible at trial.

The Municipal Defendants argue that Plaintiffs, despite ample opportunity to do so, have conducted no discovery and submit no admissible evidence to support the serious allegations of municipal wrongdoing leveled in the complaint.  This argument is well founded.  Plaintiffs have submitted contemporaneous surveys and letters of complaint to all the defendants, municipal and private, which tend to show defects in the Eaton Row Homes at the times Plaintiffs moved into them.  Some of these documents contain suggestions or speculations by third parties that are consistent with one or more of Plaintiffs' theories of conspiracy, political motivation, and exalting speed over quality construction.  But such inadmissible hearsay declarations may not be considered on a motion for summary judgment.  Plaintiffs' opposition to the Municipal Defendants' motion for summary judgment depends to an impermissible degree upon the conclusory and conjectural allegations of their complaint.

Defendant City of New Haven contends correctly that Plaintiffs have not submitted evidence to prove that their damages were caused by a policy or custom established by the City. If fault occurred in the inspection of the Eaton Row Homes or the issuance of Certificates of Use and Occupancy for them, it was the fault of the LCI inspectors.  But a municipality is not liable for the acts or omissions of their employees under a theory of *respondeat superior*. *Monell v. N.Y. City Dep't. of Social Servs.*, 436 U.S. 658 (1978).  *Monell* and subsequent cases "have required a plaintiff seeking to impose liability on a municipality under § 1983 to identify a municipal 'policy' or 'custom' that caused the plaintiff's injury."  *Bd. of County Comm'rs v. Brown,* 520 U.S. 397, 403 (1997).  Plaintiffs at bar do not sufficiently plead, let alone offer evidence to prove, that any shortcomings in the inspection or certification of the Eaton Row

Homes occurred as the result of the City's policy or custom.

Defendant Mayor DeStefano contends correctly that the Plaintiffs have not submitted evidence of his personal involvement in the acts and omissions of which the Plaintiffs complain. Plaintiffs are required to do so in order to state a viable claim against DeStefano. "Before § 1983 damages are awarded, a plaintiff must show that the defendant was personally involved – that is, he directly participated – in the alleged constitutional deprivations." *Gronowski v. Spencer*, 424 F.3d 285, 293 (2d Cir. 2005). In *Gronowski*, the Second Circuit, affirming a jury verdict in plaintiff's favor, held that "sufficient evidence existed for the jury reasonably to find that the Mayor was involved in the action adversely affecting Gronowski and that this involvement was precipitated by the Mayor's dislike for Gronowski's political activities." *Id*. The case may be contrasted with *Stancuna v. Town of Wallingford*, 487 F. Supp. 2d 15 (D. Conn. 2007), where plaintiff sued the Town and its Mayor for an alleged deprivation of his equal protection rights in respect of selective enforcement of Town zoning regulations and Code provisions. The district court (Arterton, J.) granted the Mayor's motion for summary judgment: "Plaintiff's speculation that the Mayor somehow had a hand in the enforcement actions taken does not demonstrate a triable claim and does not suffice to defeat summary judgment in favor of [the Mayor]." *Id*. at 22. In the case at bar, Plaintiffs' theory that Mayor DeStefano controlled the actions of the City building inspectors for his own political advantage is unsupported by proof and does not rise above the level of speculation.

In human terms, it is impossible not to sympathize with the Plaintiffs. While I make no findings on the issues, Plaintiffs submit a considerable amount of contemporaneous documentation tending to show that their Eaton Row Homes were marred by significant defects,

20

repairs were less than satisfactory, and Plaintiffs were frustrated by the responses to their repeated complaints and appeals to the Municipal Defendants and the Eaton Row Defendants. Our houses, we have on early authority, are our castles:[4] places of security and serenity, where we may seek refuge from the stress and anxiety of the outside world.  To have our houses themselves become sources of stress and anxiety is cruel; and when we believe that cruelty is inflicted by the conduct of others, we may feel that they should compensate us.

However, in legal terms, the Plaintiffs' claims against the Municipal Defendants are confined and restrained by the statute creating them and appellate decisions binding upon this Court.  The jurisdictional basis for those claims is 42 U.S.C. § 1983, which provides in pertinent part that any person or entity acting under color of state law who deprives anyone "of any rights, privileges, or immunities *secured by the Constitution*" is liable for the resulting damages (emphasis added).  That means that it is not enough for Plaintiffs to plead, and even prove, that employees of the Municipal Defendants acted wrongfully in connection with the construction and inspection of the Plaintiffs' homes.  Plaintiffs must plead and prove that the Defendants' conduct deprived them of rights guaranteed by the United States Constitution.  Counsel for Plaintiffs recognize that necessity.  The complaint they drafted alleges violations of the Equal Protection Clause and the Due Process Clause, substantive and procedural, contained in the Constitution. These claims fail because, for the reasons stated in this opinion, the record on these motions for summary judgment, considered in the light of decisions by the Supreme Court and the Second

---

[4]  "For a man's house is his castle, *et domus sua cuique est tutissimum refugium*."  Sir Edward Coke (1552-1634), *Third Institute: Commentary upon Littleton*, cap. 73; "The house of every one is to him as his castle and fortress."  Coke, *J.*, *Semayne's Case*, 5 Rep. 91b.

Circuit, make it plain that Plaintiffs' constitutional claims are not viable as a matter of law.[5]

In consequence, the Municipal Defendants' motions for summary judgment are granted, and the Plaintiffs' claims against them are dismissed with prejudice.

## C.     CUTPA Claims Against the Eaton Row Defendants

There remain the Plaintiffs' state law claims under CUTPA against the Eaton Row Defendants.  Since all federal claims have been dismissed, the Court declines to exercise supplemental jurisdiction over the state law claims.  *See* 28 U.S.C. § 1367(c)(3) ("The district courts may decline to exercise supplemental jurisdiction over a claim . . . if . . . the district court has dismissed all claims over which it has original jurisdiction.")  The Court may appropriately decline to exercise supplemental jurisdiction where, as here, the parties' rights and obligations depend upon the construction and application of state law.  *See, e.g., Assoko*, 539 F. Supp. 2d at 741 ("This lawsuit is, at its core, a contract dispute between homebuyers and a developer who sold them substandard housing. . . . While the Court is sympathetic to the unfortunate situation in which Plaintiffs find themselves, such a claim is not, as alleged, constitutional and instead belongs in state court."); *Collins v. West Hartford Police Dept.*, 380 F. Supp. 2d 83, 95 (D. Conn. 2005) (quoting *United Mine Workers of America v. Gibbs*, 383 U.S. 715, 726 (1966) ("[N]eedless decisions of state law should be avoided both as a matter of comity and to promote justice between the parties, by procuring for them a surer-footed reading of applicable law.").  There does not appear to be complete diversity of citizenship between Plaintiffs and the Eaton Row Defendants, and so there is no independent source of federal jurisdiction over those claims.

----

[5]  Given the view I take of the case, I need not consider the Municipal Defendants' claims of qualified immunity.

IV.     **CONCLUSION**

For the foregoing reasons, the motions of Defendants John DeStefano, Jr., the City of New Haven, and the Housing Authority of the City of New Haven for summary judgment [Docs. 97 & 105] are **GRANTED**.  Plaintiffs' complaint as to those Defendants is dismissed with prejudice.  Because the Court declines to exercise supplemental jurisdiction over the Plaintiffs' state law claims against Defendants Affordable Housing Development Company, L.L.C., Eaton Row, L.L.C., and Jonathan Rose Companies, L.L.C., the Court does not reach the merits of the motion for summary judgment [Doc. 102] by those Defendants, and that motion is **DENIED AS MOOT**.  Because Plaintiffs commenced this action in the Superior Court of the State of Connecticut for the Judicial District of New Haven, and the case was subsequently removed to this Court, Plaintiffs' claims against those Defendants are **REMANDED** to the Superior Court. The Clerk is directed to close the case.

It is SO ORDERED.

Dated: New Haven, Connecticut

November 25, 2009

_____*/s/ Charles S. Haight, Jr.*_____
Charles S. Haight, Jr.
Senior United States District Judge

23